# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

ELVIS ALICAIC,

    Plaintiff,

vs.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

Case No. 21-CV-2035-KEM

**MEMORANDUM OPINION AND ORDER**

_____

Plaintiff Elvis Alicaic seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Alicaic argues that the administrative law judge (ALJ) erred in determining his residual functional capacity (RFC). I find that substantial evidence does not support the ALJ's finding that Alicaic could frequently handle and finger, and I **reverse** the Commissioner's decision and **remand** for an award of benefits.

## I.    BACKGROUND[1]

Alicaic, born in 1981, worked full-time for years as a quality control inspector at a meatpacking plant; prior to that, he had worked full-time on the production line for a cabinet company. AR 273, 323.[2] He stopped working on December 14, 2017, after suffering a stroke. Doc. 13. His stroke manifested as left-sided paralysis and weakness and resulted in his hospitalization for four days. *Id.*

---

[1] For a more thorough overview of the treatment records, see the Joint Statement of Facts (Doc. 13).

[2] "AR" refers to the administrative record filed before, available at Docs. 10-2 to 10-14.

A February 2018 treatment record from Alicaic's primary care provider, Vinko Bogdanic, MD, noted that despite improvement, Alicaic still suffered "slight walking difficulties." AR 739. He directed Alicaic to continue with home exercises and massage until his follow-up appointment with the hospital's stroke department, which was scheduled for the end of March. *Id.* At that appointment at the stroke clinic, Alicaic complained of ongoing, daily left-sided pain in his arms and legs. AR 495, 498. At its worst, he reported losing control of his arms and legs and suffering increased weakness. *Id.* The neurologist prescribed gabapentin. AR 495. On objective examination, the neurologist observed normal sensation and tone but 4/5 strength in Alicaic's left arm with notable breakaway weakness. AR 499. Based on his examination and "minor deficits," the neurologist noted it seemed reasonable for Alicaic to return to work, and she suggested Alicaic check with his employer about lighter duties. AR 500. A few days later, however, Dr. Bogdanic extended Alicaic's work excuse given his "ongoing issues" (including instances of confusion reported by Alicaic's wife and father) and "slow recovery from his stroke." AR 732, 734.

Despite the use of gabapentin, Alicaic continued to visit Dr. Bogdanic every few weeks complaining of pain and weakness in his left arm and leg. In late April 2018, Dr. Bogdanic observed "visible left leg clumsiness" and noted Alicaic reported intense tingling in his left arm. AR 729. Dr. Bogdanic also noted Alicaic reported walking for an hour and a half every day, but that with this prolonged use, his leg became tired, making balance difficult. AR 731. In mid-June 2018, Dr. Bogdanic noted continued left-sided weakness and clumsiness. AR 724, 726. In early July 2018, Alicaic attempted to return to work, but he "was released back to physicians" after four hours due to trouble walking. AR 721. Dr. Bogdanic noted Alicaic's stroke symptoms were "almost completely" resolved, but Alicaic continued to suffer "residual clumsiness on the left side," mostly in his leg and arm, "with occasional pain." *Id.* Dr. Bogdanic referred Alicaic to a neurologist. AR 723.

Shortly thereafter, in July 2018, Alicaic met with neurologist Ivo Bekavac, MD, PhD. AR 481-82, 489. Alicaic reported that after his stroke, he continued to suffer intermittent weakness and numbness in his left arm and leg. AR 487, 489. On objective examination, Dr. Bekavac noted "no sign of weakness," including 5/5 strength in all extremities, but did observe diminished sensation in his left arm and leg. *Id.* After ordering a brain MRI, which was normal, Dr. Bekavac diagnosed Alicaic with Derjerine-Roussy syndrome. AR 483, 487, 489. Derjerine-Roussy syndrome, also called central post-stroke pain or thalamic pain syndrome, is a rare post-stroke neuropathic pain syndrome that can onset days, months, or even years after a person suffers from a stroke, with symptoms usually beginning within the first six months.[3] Symptoms include unexplained pain, tingling, or weakness on one side of the body that can be constant or intermittent.[4] Derjerine-Roussy syndrome is poorly understood, which can make pain-management difficult.[5] To begin, Dr. Bekavac discontinued gabapentin and prescribed oxcarbazepine. AR 487, 495, 1180, 1267.

Oxcarbazepine helped. Alicaic reported in August 2018 (to both Drs. Bekavac and Bogdanic) "doing better," with his arm "completely controlled" but "still struggling with the left leg weakness." AR 486, 713. In September 2018, Dr. Bekavac noted Alicaic's symptoms were stable with oxcarbazepine; the next week, Dr. Bogdanic noted the same, although Alicaic reported still experiencing some clumsiness and weakness. AR 485, 709-11. In early October 2018, Alicaic followed up with the stroke clinic,

---

[3] *See* **Jose Vega**, *Stroke-Induced Pain Is Called Dejerine-Roussy Syndrome*, Very Well Health, https://www.verywellhealth.com/stroke-and-pain-information-3146082 (last updated March 28, 2021); **Muhammad U. Jahngir & Adnan I. Qureshi**, *Dejerine Roussy Syndrome*, National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK519047/ (last updated July 4, 2022); **Sohail M. Mulla, et al.**, *Management of Central Poststroke Pain*, 46 Stroke Am. Heart Ass'n 2853 (Sept. 10, 2015), available at: https://www.ahajournals.org/doi/10.1161/strokeaha.115.010259.

[4] *Id.*

[5] *Id.*

reporting "doing well" and that oxcarbazepine had helped a lot. AR 495. Alicaic continued to report "some mild arm numbness remaining," as well as pain in his left arm and leg (worse in the arm). *Id.* Objective neurological examination showed 5/5 strength in Alicaic's left arm and 4/5 strength in his left leg, with normal sensation in both extremities. AR 496. Later in October 2018, Alicaic met with Dr. Bogdanic, who noted that although Alicaic had recovered to some degree, his left-sided clumsiness was getting worse throughout the day. AR 706. Dr. Bogdanic noted Alicaic had likely reached maximum medical improvement and would not be able to return to his pre-stroke heavy physical work. AR 708.

Alicaic applied for DI benefits in November 2018. At an appointment with his primary care provider that same month, Alicaic continued to complain of numbness in his left arm and leg, and Dr. Bogdanic noted Alicaic walked "very slowly." AR 701. In December 2018, Alicaic told Dr. Bogdanic he continued to feel weak and clumsy on his left side, and he also reported "periodic urinary incontinence without any awareness." AR 779. The next week, Dr. Bekavac noted Alicaic's symptoms were stable with medication, and he observed 5/5 strength in both his left arm and leg. AR 1282.

In January 2019, Alicaic attended a consultative examination set up by his attorney with Farid Manshadi, MD. AR 1149-54. He reported constant pain in his left arm and leg and "good days and bad days." *Id.* On objective examination, Dr. Manshadi observed 4/5 strength on the left side, impaired sensation on the left side compared to the right side, abnormal gait with not "much left arm swinging," and impaired coordination in the left arm. *Id.* He opined that Alicaic could not work for any part of the day in a job that required repetitive use of his left hand, fingers, or arm. AR 1152.

Alicaic attended another consultative examination in March 2019, this time ordered by the Social Security Administration. AR 1165-69. The consultative examiner, Brian Allen, DO, observed 3/5 grip strength with the left hand, the ability to make a full fist and extend his fingers, and the ability "to do finger opposition of the left hand but slowly." AR 1167.

4

In early May 2019, Alicaic complained to his primary care provider of worsening balance issues, noting he was walking with a cane (originally prescribed upon his discharge from the hospital after his stroke). AR 1332; Doc. 13. Dr. Bogdanic noted Alicaic continued to suffer "mild left sided clumsiness." AR 1332. In June 2018, Alicaic reported he had stopped taking oxcarbazepine a month ago; Dr. Bekavac's treatment notes reflect Alicaic "stopped taking oxcarbazepine on his own," but both the stroke clinic treatment notes and later physical therapy notes reflect cardiology discontinued oxcarbazepine due to a chest-pain side effect. AR 1180, 1262, 1281. Alicaic reported more pain and balance problems, and on objective examination, Dr. Bekavac noted "a possible functional component" when testing upper and lower extremity strength. AR 1281. The next week, Alicaic had a stroke clinic appointment, where he reported worsening left-sided weakness and numbness. AR 1265. Alicaic said massages, bath salts, and different creams helped but did not totally eliminate the pain. AR 1262-63. The provider observed decreased sensation in his left arm, as well as drag and significant breakaway weakness in his left arm with a questionable functional component. AR 1264-65. She recommended that he discuss amitriptyline with his primary care provider and referred him for a physical therapy evaluation (which he had not done earlier in time due to his lack of health insurance and limited finances). AR 1158, 1265-66.

Alicaic met with rehabilitation specialist Philip Chen, MD, in late July 2019. AR 1266. He reported using a cane to walk most of the time, although not on "good days." AR 1267. On objective examination, Dr. Chen noted decreased sensation in Alicaic's left leg and forearm; and 4/5 strength in finger flexion and grip, with giveaway strength on the left side throughout testing. AR 1268. He recommended an ankle brace (which Alicaic used), referred Alicaic to physical therapy, and prescribed duloxetine for neuropathic pain (Alicaic ultimately could not afford this medication). AR 1269-70, 1275.

Alicaic participated in physical therapy from August to October 2019, attending nineteen sessions. AR 1180-1259. He made limited progress and was ultimately

5

discharged because he could not consistently control his left leg, resulting in the inability to do some of the exercises, as well as making some of the exercises dangerous (e.g., physical therapy notes reflect he "caught" his left foot walking as he became more fatigued, even with the use of the ankle brace).  AR 1173-74, 1216, 1251.

At an appointment with his primary care provider in August 2019, Alicaic continued to complain of left-sided weakness, and Dr. Bogdanic noted "slight left weakness and clumsiness."  AR 1353, 1355.  In November 2019, Alicaic primarily complained of confusion to Dr. Bogdanic, and Dr. Bogdanic noted unsteadiness and some rigidity on objective examination.  AR 1355, 1371.  Alicaic returned to the stroke clinic and rehabilitation specialist in December 2019.  He reported continuing to suffer neuropathic pain in his left arm, although he noted pain was not as much of an issue as left-sided weakness.  AR 1270, 1275.  On objective examination of his upper arm, the stroke clinic provider noted decreased sensation, "no effort against gravity," trace movement in his fingers, and proximal strength 0/5 and distal strength 1/5.  AR 1270.  The provider was "[n]ot sure if there is some functional component" given breakaway strength observed at prior appointments and now seemingly no effort.  AR 1273.  Dr. Chen noted "at least antigravity" strength in Alicaic's left hand and thumb flexion, as he could grip paper between his left fingers and thumb.  AR 1275.  The stroke clinic provider noted that Alicaic's left-sided weakness had worsened, and she recommended obtaining another brain MRI, but Alicaic indicated it was too expensive.  AR 1273.  Dr. Chen discussed trying nortriptyline for neuropathic pain, but Alicaic declined after discussing possible side effects.  AR 1276.

The only other treatment notes in the record are from appointments with Dr. Bogdanic in February and May 2020.  In February 2020, Dr. Bogdanic noted that Alicaic's stroke caused "balance issues and slight weakness affecting" his leg more than his arm "that has not been getting any better.  AR 1384.  He noted Alicaic walked unsteadily and used a cane.  AR 1386.  In May 2020, Dr. Bogdanic continued to observe residual left-sided weakness.  AR 1402, 1404.  On objective examination, Dr. Bogdanic

noted Alicaic's "left side is somewhat weaker," as he was unable to walk straight even with the use of a cane. AR 1406.

The Social Security Administration denied Alicaic's DI application on initial review in December 2018 and on reconsideration in April 2019. AR 127-56. In connection with those reviews, state agency consultants reviewed the treatment notes in the record and evaluated Alicaic's RFC. In December 2018, the state agency consultant opined that Alicaic suffered from no manipulative limitations. AR 134. On reconsideration in April 2019, the state agency consultant found that based on the consultative examiners' objective examinations, Alicaic suffered some limitation in handling and fingering. AR 149-51. Still, he concluded Alicaic could "frequently" handle and finger on the left side, meaning from one-third to two-thirds of an eight-hour day.[6] *Id.*

Alicaic requested review by an ALJ, who held a telephonic hearing on September 1, 2020, at which Alicaic and a vocational expert (VE) testified. AR 85-86. On November 3, 2020, the ALJ issued a written decision following the familiar five-step process outlined in the regulations,[7] finding Alicaic not disabled from December 14, 2017, through the date of the decision. AR 31-42. The ALJ recognized that Alicaic suffered from severe impairments as a result of his stroke, including Dejerine-Roussy syndrome. AR 58. Nevertheless, the ALJ found that Alicaic could perform sedentary

---

[6] *See, e.g.*, ***Dictionary of Occupational Titles (DOT)*, App. C**.

[7] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." ***King v. Astrue***, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. §§ 404.1520(a)(4), 416.920**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." ***Goff v. Barnhart***, 421 F.3d 785, 790 (8th Cir. 2005) (quoting ***Eichelberger v. Barnhart***, 390 F.3d 584, 591 (8th Cir. 2004)).

work requiring him to "frequently handle and finger on the left." AR 60, 65. Relying on VE testimony, the ALJ found that with this RFC,[8] Alicaic could not perform his past relevant work, but that a significant number of other jobs existed in the national economy that Alicaic could perform. AR 64-65. If the ALJ had found Alicaic more limited on his left side, then he would have been found disabled, as the VE testified that if Alicaic could only use his left hand and fingers on an "occasional basis" (i.e., less than one-third of the time), no jobs would exist that Alicaic could perform. AR 123-24.

Alicaic appealed. The Appeals Council denied Alicaic's request for review on May 18, 2021, then indicated it had vacated that decision but again denied review on June 27, 2021 (AR 1-11); the ALJ's decision is the final decision of the Commissioner.[9] Alicaic filed a timely complaint in this court seeking judicial review of the Commissioner's decision (Docs. 1, 3).[10] The parties briefed the issues (Docs. 16-18) and consented to the exercise of jurisdiction by a United States magistrate judge (Doc. 11).

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole."[11] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[12] The court "do[es] not reweigh the evidence or review the factual record de novo."[13] If, after

---

[8] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)**).

[9] *See* **20 C.F.R. § 404.981**.

[10] *See* **20 C.F.R. § 422.210(c)**.

[11] *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**.

[12] *Kirby*, 500 F.3d at 707.

[13] *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[14]

Alicaic raises several arguments, many of which implicate the ALJ's finding that Alicaic could perform work that required him to frequently use his left hand and fingers. Alicaic argues that the ALJ did not give good reasons for finding unpersuasive Dr. Manshadi's opinion that Alicaic could not perform work requiring repetitive use of his left hand and arm. Alicaic also argues that the ALJ erred in discounting his subjective complaints, including his testimony that as a result of his stroke, he suffers numbness in his left hand that makes it difficult to grab things using his left hand. AR 103. Alicaic also generally argues that substantial evidence, including some medical evidence, does not support the ALJ's finding that he could frequently grasp and finger.

The ALJ found Dr. Manshadi's opinion inconsistent with the overall medical evidence of record, relying on the stroke clinic provider's objective examination from October 2018 in which she found Alicaic had 5/5 strength in his left arm and intact sensation (the ALJ also noted Alicaic reported doing well at that appointment). AR 61, 63. The ALJ also noted that Dr. Bogdanic's treatment records consistently reflect "grossly nonfocal" neurological examinations (the ALJ recognized Dr. Bogdanic additionally observed "slight left weakness and clumsiness" in August 2019 and some rigidity and unsteadiness in November 2019). AR 63, 702, 707, 710, 713, 719, 722, 725, 730, 733, 736, 738, 780, 1310, 1333, 1355, 1371.

Although Dr. Bogdanic largely observed normal neurological findings, he was not performing the in-depth neurological tests seen elsewhere in the record (i.e., he was not evaluating arm or grip strength). In addition, Dr. Bogdanic's treatment records reflect that he observed signs of left-sided weakness despite generally noting a "grossly

---

[14] *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

nonfocal" objective neurological examination. *See, e.g.*, AR 729 (noting "visible left leg clumsiness" in the narrative section). With regard to the stroke clinic provider's finding of normal left-arm strength and sensation in October 2018, the ALJ failed to recognize that Alicaic was taking oxcarbazepine at the time, a medication that improved his symptoms and that he ultimately had to discontinue due to cardiologic side effects. And as Alicaic argues, the treatment records support that his symptoms worsened as time went on, which is not inconsistent with Dejerine-Roussy syndrome. In March 2018, when Alicaic was not taking any medication, the stroke clinic provider noted normal sensation and 4/5 strength with notable breakaway weakness. AR 499. In July 2018, when Alicaic was taking gabapentin, Dr. Bekavac noted diminished sensation but 5/5 strength in the left arm. Dr. Bekavac also observed 5/5 strength in December 2018 (when Alicaic was taking oxcarbazepine). In January 2019, Dr. Manshadi observed 4/5 strength, but a lack of arm swinging while walking and impaired coordination and sensation in the left arm; he opined based on this objective examination that Alicaic's use of his left arm was more limited than found by the ALJ. In March 2019, Dr. Allen found 3/5 grip strength. In June 2019 (after Alicaic stopped taking oxcarbazepine), the stroke clinic provider noted decreased sensation and significant breakaway weakness in his left arm. In July 2019, Dr. Chen noted decreased sensation and 4/5 wrist and grip strength with giveaway strength throughout testing on the left side. In December 2019, the stroke clinic provider noted decreased sensation, a left arm with no effort against gravity, and 1/5 strength in Alicaic's fingers; Dr. Chen observed at least antigravity strength as he could grip papers.

The objective examinations, when viewed as a whole, do not support the ALJ's finding that Alicaic could frequently handle and finger on the left.[15] Alicaic consistently

---

[15] ***Herrmann v. Colvin***, 772 F.3d 1110, 1112 (7th Cir. 2014) (noting reduced grip strength is consistent with significant handling limitations); ***Pierce v. Colvin***, No. 3:15-cv-00102 JTK, 2016 WL 1637325, at *2 (E.D. Ark. Apr. 21, 2016) (holding that claimant's "limited grip strength bilaterally would likely impact [claimant's] ability to handle and finger").

complained of (and sought treatment for) numbness, weakness, and pain in his left arm. And the treatment records also support that Alicaic's left-sided weakness worsened with repetitive use, suggesting that even if Alicaic could use his hands and fingers on occasion, he could not sustain the repetitive use of his hands and fingers (two-thirds, or six hours, of an eight-hour day, day in and day out) as found by the ALJ. The only doctor to examine Alicaic and to issue an opinion on his RFC found he would not be able to frequently handle and finger. Although the nonreviewing state agency consultants issued opinions supporting the ALJ's RFC determination, they issued these opinions when Alicaic's symptoms were largely stable due to oxcarbazepine (indeed, one of the consultants found Alicaic would not suffer any manipulative limitations at all).

I also agree with Alicaic that his activities of daily living are not inconsistent with an inability to frequently handle and finger. In a November 2018 function report (completed with help from his wife), Alicaic reported that his wife helped him with bathing and shaving, did household chores and cooking, and even accompanied him to appointments. AR 330-37. Treatment records reflect that Alicaic reported driving alone in April 2018 and watching television and playing with his son in July 2018. AR 473, 734. In March 2019, in connection with a disability consultative examination, he noted his wife did the cleaning, cooking, and laundry, and that although he was able to drive when he was feeling okay, his brother often provided transportation. AR 1159. In July 2019, as part of his evaluation for physical therapy, Alicaic reported he could put on his clothes independently for the most part, but he needed assistance to put on his pants; he also said he needed assistance in preparing meals, traveling, and taking care of his six-year-old son, noting that he lived with his wife and brother and that his brother helped with childcare when his wife was away. AR 1267. At his physical therapy appointments in fall 2019, Alicaic consistently reported he did not do much over the weekend. AR 1189, 1199. In December 2019, Alicaic reported using his right arm to feed himself, use the bathroom, perform grooming tasks, and do some dressing; he noted he needed

help with some dressing, bathing, preparing meals, and transportation. AR 1275. He said his wife acted as his caretaker. AR 1272.

The treatment notes and other evidence in the record overwhelmingly support that Alicaic could not engage in the repetitive use of his hands and fingers found by the ALJ. Because the VE testified that an inability to frequently handle and finger would result in no jobs available for Alicaic to perform, remand for an award of benefits is appropriate.[16]

### III. CONCLUSION

The Commissioner's decision is **reversed**, and this case is remanded for an award of benefits. The clerk of court is directed to enter judgment in favor of Alicaic.

**SO ORDERED** on September 21, 2022.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[16] *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (the court may remand for an award of benefits "if the record 'overwhelmingly supports'" a finding of disability).